IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRYSTAL HARRIS, et al.,

                    Plaintiffs,

        v.

LAWRENCE KRASNER, et al.,

                    Defendants.

CIVIL ACTION
NO. 22-839

## OPINION

Slomsky, J.                                                      May 12, 2023

### TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................. 1

II.   BACKGROUND ................................................................................................................... 2

  A.   Factual Background ......................................................................................................... 2

  B.   Amended Complaint ........................................................................................................ 5

  C.   Motions to Dismiss the Amended Complaint ................................................................. 7

III.  STANDARD OF REVIEW .................................................................................................. 8

IV.   ANALYSIS ........................................................................................................................... 9

  A.   Plaintiff Harris's Section 1983 Claims Alleged in Counts I and II
       against Defendants Will Be Dismissed ......................................................................... 10

    1.   Counts I and II against District Attorney Krasner and
         Assistant District Attorney Kean Will Be Dismissed .................................................. 10

      a.   DA Krasner and ADA Kean Are Entitled to Absolute Immunity ........................... 11

        i.   The Law on Absolute Immunity ......................................................................... 11

       ii.   First Prong of Absolute Immunity:  Conduct of DA Krasner and ADA Kean Underlying Plaintiff's Cause of Action.....................................12

       iii.  Second Prong of Absolute Immunity:  Function Served by the Conduct of DA Krasner and ADA Kean .................................13

       iv.  DA Krasner and ADA Kean Are Entitled to Absolute Immunity .....................15

   2.  Counts I and II against the City of Philadelphia Will Be Dismissed...........................17

**B.**  **Request for Injunctive Relief under the Pennsylvania Constitution in Count III against Defendants Krasner and Kean Will Be Denied** ...............................................18

**C.**  **Intentional Infliction of Emotional Distress Claim Alleged in Count V against Defendants Will Be Dismissed** ..........................................................................20

   1.  DA Krasner and ADA Kean Are Entitled to High Public Official Immunity .............20

   2.  DA Krasner, ADA Kean, and the City Are Entitled to Immunity under the Political Subdivision Tort Claims Act .........................................................22

**V.**  **CONCLUSION**................................................................................................................24

I.      **INTRODUCTION**

In August 2020, during a criminal hearing at which she was called as a witness, Plaintiff Crystal Harris, a police officer with the Philadelphia Police Department ("PPD"), learned that a member of her family had filed a complaint against her years earlier with the PPD's Internal Affairs Division ("IAD").  According to Harris, this family member filed the complaint in 2014 (the "IAD Complaint") in retaliation for Harris reporting his eight years of inappropriate sexual conduct with Plaintiff Kadeyja Dixon-Fowler, a minor in Harris's family.  Upon learning of the IAD Complaint, Harris contacted the District Attorney's Office to have it removed from her personnel file, but she did not receive any response.

Two months later, Plaintiff was called to testify in another criminal matter and learned that the IAD Complaint was still in her personnel file.  She therefore contacted the Fraternal Order of Police ("FOP"), which then contacted the District Attorney's Office to discuss expunging the IAD Complaint.  Someone in the District Attorney's Office involved with Harris's IAD Complaint told her that that the Complaint would be expunged from her personnel file because it was determined after an investigation that the Complaint was unfounded.  Plaintiff later learned, however, that her name was placed on what is known as a Do Not Call List, which contains the names of police officers who should not be used as witnesses by the District Attorney's Office.

As a result of these events, Plaintiffs filed in this Court a Complaint, followed by an Amended Complaint naming as Defendants various parties.[1]  Defendants responded to the

---

[1] Plaintiffs in this case are:  Crystal Harris and Kadeyja Dixon-Fowler.  Defendants in this case are:  the City of Philadelphia (the "City"); Philadelphia District Attorney Office; District Attorney ("DA") Lawrence Krasner; and Assistant District Attorney ("ADA") Brian Kean.  The Philadelphia District Attorney's Office, DA Krasner, and ADA Kean filed a joint Motion to Dismiss the Amended Complaint (Doc. No. 23), and the City filed its own Motion to Dismiss the Amended Complaint (Doc. No. 25).

Amended Complaint with two Motions to Dismiss, which are presently before the Court for disposition.

## II.     BACKGROUND

### A.     Factual Background

Plaintiff Harris has been a police officer with the PPD for over twenty-three (23) years, seventeen of which were spent in the PPD's Highway Patrol Unit.  (Doc. No. 15 at 2.)  The Highway Patrol Unit focuses on enforcing Philadelphia's traffic laws and on policing high crime areas for offenses such as robbery, rape, unlawful possession of a firearm, and other crimes in progress.  (Id. at 4.)

PPD officers receive overtime pay for testifying at criminal proceedings.  (Id.)  Harris earned approximately $30,000 per year in overtime pay for her court appearances as a police officer testifying in criminal matters.  (Id. at 5.)  Around August 2020, Plaintiff learned during a criminal hearing at which she was testifying that an internal affairs complaint was filed against her in 2014 and was a part of the discovery provided to defense counsel in that case.  (Id.)  Also included with the discovery was her disciplinary record containing reports of Internal Affairs Division ("IAD") investigations of any other complaints filed against Harris.  (Id.)  The IAD Complaint was filed with the IAD by one of the male members of her family.  (Id.)  It alleged that she abused her authority as an officer.  (Id.)  Harris believes that this family member filed the complaint against her in retaliation for her reporting his sexual molestation of Plaintiff Kadeyja Dixon-Fowler over an eight year period.[2]  (Id.)

---

[2]  The male member of Harris's family was arrested, convicted, sentenced to a term of imprisonment, and is a registered sex offender.  (Doc. No. 15 at 5.)

Upon learning of the existence of the IAD Complaint, Harris sought the help of her Captain, Anthony Luca, to have it removed from her personnel file and future discovery files because it "impact[s] her arrests and subsequent courtroom testimony as a police officer." (Id.) The District Attorney's office initially did not respond to any calls placed to seek assistance in removing the IAD Complaint from her personnel file.[3] (Id.) In October 2020, Plaintiff again was called to testify as a witness in another criminal proceeding and discovered that the same IAD Complaint was included in the case's discovery file.[4] (Id.) After the proceeding ended, she went to the union office of the Fraternal Order of Police ("FOP") and spoke to a Willie Sierra about the IAD Complaint. (Id.) The FOP contacted the District Attorney's office and then "[l]egal counsel for the FOP and DA's offices became involved." (Id. at 5-6.) Harris later learned that personnel in the IAD had investigated the Complaint against her, determined that it was unfounded, and expunged it from her personnel file. (Id. at 6.)

The following year, on May 1, 2021 at around 7:00 p.m., Harris and her partner, Officer Kenneth Fazio, were on patrol and pulled over and arrested a female driver they suspected was driving under the influence.[5] (Id. at 2.) As part of standard operating procedures for Philadelphia police officers, a report documenting the arrest was prepared using the Preliminary Arraignment Reporting System ("PARS").[6] (Id. at 3.) Because Officer Fazio is male and the stopped driver

---

[3] It is unclear from the Amended Complaint whether Harris herself called the District Attorney's office or whether Captain Luca made the phone calls.

[4] Harris contends that the presiding judge, Assistant District Attorney ("ADA") Gregory Mazmanian, and defense counsel had an on-the-record conversation during which ADA Mazmanian "agreed the IAD complaint should not have been in the discovery file." (Id.)

[5] The Amended Complaint does not state whether the driver was driving under the influence of drugs or of alcohol.

[6] PARS is a system that Philadelphia police officers use to generate arrest reports. "All defendants must have their arrest information entered into PARS." PPD Directive 5.14.1,

was female, police protocols and procedures required Harris as a female officer to "approach the suspect driver in the car," "search/pat the suspect down," and "take the female suspect into custody." (Id.)

About twelve hours after the suspect's arrest, Assistant District Attorney Kean ("ADA Kean") sent an email to "Harris's captain, Anthony Luca, and others stating he was declining prosecution of the arrest because it was not clear which officer did what during the arrest and Plaintiff Harris was Do Not Call." (Id.) The Do Not Call List referred to by ADA Kean is described in the Amended Complaint as:

> a list of police officers who are not to be called to testify in court created by the Philadelphia District Attorney's Office in or around late 2017. This list created by the District Attorney's Office essentially is a list of "dirty cops" . . . police officers who have allegedly engaged in criminal activity. The list also contains names of Philadelphia police officers who had an IAD complaint filed against them, and despite many having their IAD complaint determined to be unfounded, Defendant Krasner has sought to continue to impermissibly impugn their reputations and to directly affect their overtime pay.

(Id. at 4.) Additionally, "ADA Kean further requested the PARS be updated without showing any of Plaintiff Harris's involvement with the arrest and then to resubmit the case." (Id. at 3.)

As a result of her placement on the Do Not Call List, Harris avers that her "days as an investigating police officer [are] over as she would not be permitted to testify in court. Her career as an investigating officer [is] over." (Id. at 6.) As a result of these events, since May 13, 2021, Harris has received psychiatric care, took a leave of absence under the Family Medical Leave Act ("FMLA"), and returned to work on restricted desk duty. (Id.)

---

available at D5.14-InvestigationAndChargingProcedure.pdf (phillypolice.com). Included with arrest reports are any misdemeanor or felony charges and "[s]ubstantiated facts and testimony . . . to support all charges listed." Id. 5.14.4.B.1. When contacted by the District Attorney Charging Unit ("DACU"), PPD uses the arrest report completed on PARS "to present the Department's case." Id. 5.14.4.C.3.

Moreover, Plaintiff Dixon-Fowler:

has engaged in risky self-harm behavior since learning that her sexual assault as a minor is being divulged to members of the community by Defendant City of Philadelphia, the circumstances and facts of the assault are now to be used in cross[-]examination against her family member, Plaintiff Harris, in the prosecution of another unrelated crime[,] and has suffered extreme emotional and mental harm.

(Id.)

### B.   Amended Complaint

On September 14, 2022, Plaintiffs filed an Amended Complaint against Defendants City of Philadelphia, Philadelphia District Attorney's Office,[7] District Attorney Lawrence Krasner ("DA Krasner"), and Assistant District Attorney Brian Kean ("ADA Kean").[8]  (See id. at 1.)  The Amended Complaint contains two claims by Plaintiff Crystal Harris and three claims by both Harris and Plaintiff Kadeyja Dixon-Fowler against Defendants.  (See id. at 6-12.)

---

[7]   In Plaintiffs' Response in Opposition to the Motion to Dismiss the Amended Complaint filed by Defendants Philadelphia District Attorney's Office, DA Krasner, and ADA Kean, Plaintiffs state the following:  "As an initial matter Plaintiffs wish [to] withdraw all claims against the Philadelphia District Attorney [O]ffice as well as claims for monetary relief under the Pennsylvania Constitution (Count IV)."  (Doc. No. 27 at 3.)  Accordingly, Philadelphia District Attorney's Office will be dismissed as a Defendant in this case.  Also, Count IV is deemed withdrawn.

[8]   A pro se Complaint was filed on March 2, 2022 and served on Defendants on April 4, 2022. (Doc. Nos. 1, 3.)  On April 18, 2022, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 5.)  Plaintiffs retained legal counsel at some point between the filing of the Complaint and the filing of their Response in Opposition to the Motion to Dismiss (Doc. No. 6), which included as an exhibit an Amended Complaint (Doc. No. 6-2).  On September 14, 2022, a hearing was held with counsel for the parties on the Motion to Dismiss.  (Doc. No. 13.)  At the hearing, for the reasons stated by the Court on the record, the Court granted Plaintiffs leave to file the Amended Complaint attached to their Response in Opposition and Ordered that the Amended Complaint be the operative Complaint in this case.  (Doc. No. 14.)  That same day, the Court denied the first Motion to Dismiss (Doc. No. 5) without prejudice as moot.  (Doc. No. 17.)

Harris sues all Defendants under 42 U.S.C. § 1983[9] alleging they violated (1) her free speech rights under the First and Fourteenth Amendments to the United States Constitution (Count I) and (2) her procedural due process rights under the Fourteenth Amendment to the United States Constitution (Count II).  (See id. at 6-9.)  On these Counts, it is unclear whether Harris sues DA Krasner and ADA Kean in their official or individual capacity.  But giving her the benefit of the doubt, the Court will assume that they being are sued in their individual capacity because if they are being sued under Section 1983 in their official capacity, Harris's claims are treated as ones raised against the City of Philadelphia only.  In that event, they would be dismissed as Defendants in their official capacity.  As such, to the extent that Harris alleges that DA Krasner and ADA Kean are liable under Section 1983 in their official capacity on Counts I and II of the Amended Complaint, those claims will be dismissed and the claims in Counts I and II will be treated as if Plaintiff sued them in their individual capacity.

In addition, both Plaintiffs sue DA Krasner and ADA Kean in their official capacity seeking injunctive relief against them, alleging that they violated Article 1, Sections 1 and 11 of the Pennsylvania Constitution[10] (Count III).  (Id. at 9.)  Plaintiffs also claim that all Defendants are

---

[9]   42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[10]  Article 1 of the Pennsylvania Constitution provides, in pertinent part:

> § 1.  All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and

liable for intentional infliction of emotional distress under Pennsylvania common law (Count V). (Id. at 11-12.)  And, as noted, Count IV has been withdrawn.

### C.      Motions to Dismiss the Amended Complaint

Two Motions to Dismiss the Amended Complaint were filed in this case.  First, on October 26, 2022, Defendants Philadelphia District Attorney's Office, DA Krasner, and ADA Kean filed a Motion to Dismiss.  (Doc. No. 23.)  Then, on November 7, 2022, Defendant City of Philadelphia (the "City") filed its own Motion to Dismiss.  (Doc. No. 25.)  In both Motions, Defendants argue that Plaintiffs' claims fail as a matter of law because DA Krasner, ADA Kean, and the City are required under Brady v. Maryland, 373 U.S. 83 (1963)[11] and Giglio v. United States, 405 U.S. 150 (1972)[12] to disclose to criminal defendants internal affairs investigation files on Harris.  (Doc. Nos. 23 at 17-20; 25 at 8-12.)  Therefore, DA Krasner and ADA Kean argue that all claims of Plaintiffs are barred by either absolute immunity or high public official immunity.  (See Doc. No. 23 at 13-

---

liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

. . .

§ 11.  All courts shall be open; and every man for an injury done to him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.  Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. Art. 1, §§ 1, 11.

[11] Under Brady and its progeny, the United States Supreme Court held that "prosecutors have an affirmative duty to disclose material evidence favorable to the defendant."  United States v. Reyes-Romero, 959 F.3d 80, 107 (3d Cir. 2020) (citing Dennis v. Sec'y, 834 F.3d 263, 284 (3d Cir. 2016) (en banc)).

[12] Under Giglio and its progeny, prosecutors are required to disclose to a criminal defendant "exculpatory impeachment material," which "includes 'evidence affecting' witness 'credibility,' where the witness'[s] 'reliability' is likely 'determinative of guilt or innocence.'"  United States v. Ruiz, 536 U.S. 622, 628 (2002) (quoting Giglio, 405 U.S. at 154).

17.)  The City has a different argument.  It asserts that Plaintiffs fail to identify a policy or custom it promulgated or had that make it responsible for their alleged injuries. [13]  (Doc. No. 25 at 18-19.) Each Motion will be discussed in more detail below.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

---

[13]  As discussed infra, a plaintiff suing a municipality under Section 1983 must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

In Counts I and II of the Amended Complaint, Plaintiff Harris alleges that all remaining Defendants—the City, DA Krasner, and ADA Kean—are liable under 42 U.S.C. § 1983 for violations of her rights under the First and Fourteenth Amendments to the United States Constitution.  (Doc. No. 15 at 6-8.)  Specifically, Harris alleges that Defendants violated her free

speech rights (Count I) and her procedural due process rights (Count II).[14]  (See id.)  In Count III, Plaintiffs Harris and Dixon-Fowler seek equitable relief under Article I, Sections 1 and 11 of the Pennsylvania Constitution against DA Krasner and ADA Kean in their official capacity to enjoin them from "disclos[ing] . . . an expunged IAD complaint involving Harris or sexual assault involving Dixon-Fowler."  (Id. at 9.)  Additionally, Plaintiffs Harris and Dixon-Fowler allege in Count V of the Amended Complaint that all Defendants are liable for intentional infliction of emotional distress.  (Id. at 11-12.)  These claims will be discussed next in turn.

### A.    Plaintiff Harris's Section 1983 Claims Alleged in Counts I and II against Defendants Will Be Dismissed

#### 1.    Counts I and II against District Attorney Krasner and Assistant District Attorney Kean Will Be Dismissed

In Defendant Krasner and Kean's Motion to Dismiss, they argue that the disclosure to criminal defendants of the IAD Complaint and file containing reports of Harris's conduct as a police officer and the placement of her on the Do Not Call List are quasi-judicial functions closely related to the conduct of a trial, which entitle them to absolute immunity barring Harris's Section 1983 claims.  (Doc. No. 23 at 13-17.)  In contrast, Plaintiff asserts that her placement on the Do Not Call List is an administrative task and that immunity does not extend to DA Krasner and ADA Kean for administrative tasks.  (Doc. No. 27 at 10.)  For reasons that follow, the Section 1983 claims alleged in Counts I and II against DA Krasner and ADA Kean will be dismissed on absolute immunity grounds.

---

[14]  Again, the Court is treating these two claims as being asserted against DA Krasner and ADA Kean in their individual capacity.

### a.   DA Krasner and ADA Kean Are Entitled to Absolute Immunity

Defendants Krasner and Kean argue that "the decision to disclose impeaching information and the process employed by the District Attorney to disclose that information is subject to absolute immunity" because those actions are "directly connected with the conduct of a trial." (Doc. No. 23 at 15 (quoting Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009)).) The Court agrees for reasons that follow.

### i.   The Law on Absolute Immunity

Prosecutors enjoy absolute immunity from lawsuits when their actions are related to the "initiation and pursuit of a criminal prosecution." Richardson v. Pierce, No. 17-2393, 2017 WL 4776838, at *6 (E.D. Pa. Oct. 23, 2017) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). These actions can be described as "judicial or quasi-judicial." Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008) (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)). A prosecutor's actions are considered quasi-judicial if they are "intimately associated with the judicial phase of the criminal process." Buckley, 509 U.S. at 270 (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). However, absolute immunity does not protect a prosecutor if he is engaged in purely investigative conduct – such as functions normally performed by a detective or police officer. Buckley, 509 U.S. at 273. "When a prosecutor 'performs the investigative functions normally performed by a detective or police officer,' he is [only] entitled to qualified immunity," not absolute immunity. Richardson, 2017 WL 4776838, at *6 (quoting Buckley, 509 U.S. at 273).

Absolute immunity "embodies the 'right not to stand trial,' and is properly raised in a Rule 12(b)(6) motion to dismiss." Odd, 538 F.3d at 207 (quoting In re Montgomery Cnty., 215 F.3d 367, 373 (3d Cir. 2000)). Thus, if the actions of a prosecutor are found to be judicial or quasi-judicial, absolute prosecutorial immunity would preclude the prosecutor from having to go to trial.

Once absolute immunity is asserted, the onus is on the prosecutor to demonstrate "that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action." Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020) (quoting Light v. Haws, 472 F.3d 74, 80-81 (3d Cir. 2007)). Indeed, "[a]sserting a[n] . . . immunity defense via a Rule 12(b)(6) motions subjects the defendant to a more challenging standard of review than would apply on summary judgment." Id. at 161 (quoting Behrens v. Pelletier, 516 U.S. 299, 309 (1996)). As a result, to earn the protection of absolute immunity, a defendant must show that the conduct triggering absolute immunity "clearly appear[s] on the face of the complaint." Id. (quoting Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989)).

A two-step analysis must be undertaken to determine if the defense of absolute prosecutorial immunity applies. Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011) (citing Odd, 538 F.3d at 208). The first is to "ascertain just what conduct forms the basis for the plaintiff's cause of action." Id. The second is to "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." Id.; see also Van de Kamp, 555 U.S. at 342 ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of the 'functional' considerations discussed [in other cases].") (citations omitted).

### ii. First Prong of Absolute Immunity: Conduct of DA Krasner and ADA Kean Underlying Plaintiff's Cause of Action

Under the first prong of the two-part absolute immunity analysis, the Court must first "ascertain just what conduct forms the basis for the plaintiff's cause of action." Schneyder, 653 F.3d at 332 (citing Odd, 538 F.3d at 208). In the relevant portion of their Response in Opposition to DA Krasner and ADA Kean's Motion to Dismiss addressing absolute immunity, Plaintiffs argue

12

that creating the Do Not Call List "is clearly an administrative action." (Doc. No. 27 at 10.) Moreover, several paragraphs of the Amended Complaint allege that the placement of Harris on the Do Not Call List and the turning over to defense counsel of IAD reports in cases in which Harris was involved in the investigation or arrest give rise to the cause of action. (See Doc. No. 15 at 4-8.) Consequently, the conduct that forms the basis of Harris's claims here are (1) placing Harris on the Do Not Call List and refusing to remove her from it and (2) including IAD reports on Harris in discovery files turned over to criminal defendants pursuant to DA Krasner and ADA Kean's Brady and Giglio obligations.

### iii.   Second Prong of Absolute Immunity:  Function Served by the Conduct of DA Krasner and ADA Kean

Next, the Court must "determine what function . . . [those] act[s] served." Schneyder, 653 F.3d at 332.  On the one hand, Plaintiffs claim that DA Krasner and ADA Kean's acts are administrative and for this reason are not judicial or quasi-judicial acts that entitle them to absolute immunity.  On the other hand, DA Krasner and ADA Kean assert that they are prosecutorial or administrative matters directly connected with the conduct of a trial because they acted in accordance with the legal requirements of Brady and Giglio to disclose to the defense impeachment material.  In support of their position, they rely on Van de Kamp v. Goldstein, 555 U.S. 335 (2009).

In Goldstein, a prisoner filed an action under Section 1983 against Los Angeles County prosecutors whom he alleged failed to disclose to him information that an informant "had previously received reduced sentences for providing prosecutors with favorable testimony in other cases" and that "the prosecution's failure to provide [his] attorney with this potential impeachment information had led to his erroneous conviction." Id. at 339.  Specifically, the prisoner alleged that the prosecutors "violated their constitutional obligation [under Giglio] to provide his attorney with impeachment-related information" by failing, inter alia, "to create any

13

system for the Deputy District Attorneys handling criminal cases to access information pertaining to the benefits provided to jailhouse informants and other impeachment information." Id. at 343-44.

But the Court concluded that prosecutors involved in such information management systems, although involving administrative obligations, are "directly connected with the conduct of a trial." Id. at 344. As the United States Supreme Court held:

> . . . [P]rosecutors involved in such supervision or training or information-system management enjoy absolute immunity from the kind of legal claims at issue here. Those claims focus upon a certain kind of administrative obligation--a kind that itself is directly connected with the conduct of a trial. Here, unlike with other claims related to administrative decisions, an individual prosecutor's error in the plaintiff's specific criminal trial constitutes an essential element of the plaintiff's claim . . . .

Id. at 344. The Court continued by distinguishing the type of administrative actions which entitle prosecutors to absolute immunity from other types:

> The administrative obligations at issue here are thus unlike administrative duties concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like. Moreover, the types of activities on which Goldstein's claims focus necessarily require legal knowledge and the exercise of related discretion, e.g., in determining what information should be included in the training or the supervision or the information-system management. And in that sense also Goldstein's claims are unlike claims of, say, unlawful discrimination in hiring employees.

Id.

Furthermore, the Court disagreed with the prisoner's arguments that the failure of the prosecutor's office to establish an impeachment information system "is a more purely administrative task" for which they are not entitled to absolute immunity. Id. at 348. The Court explained that "[t]he critical element of any information system is the information it contains. Deciding what to include and what not to include in an information system is little different from making similar decisions in respect to training. Again, determining the criteria for inclusion or

14

exclusion requires knowledge of the law." Id.  Put succinctly, establishing an information system containing impeachment evidence that is to be provided to defense counsel in a criminal case prior to trial is a decision that is "intimately associated with the judicial phase of the criminal process." Id. at 348-49.  Thus, prosecutors enjoy absolute immunity for their "management of a trial-related information system."[15]  Id. at 349.

### iv.  DA Krasner and ADA Kean Are Entitled to Absolute Immunity

With these precepts in mind, the Court must determine whether DA Krasner and ADA Kean's two acts involving disclosure of the IAD reports on Harris and placement of her on the Do Not Call List equate with "an information system containing potential impeachment material," the management of which entitles prosecutors to absolute immunity.  Id. at 338.  They do.  These acts fall squarely within the type of prosecutorial activity Goldstein held to cloak prosecutors with absolute immunity.  Thus, to the extent Harris asserts in Counts I and II that DA Krasner and ADA Kean wrongfully disclosed the IAD Complaint and file and placed her on the Do Not Call List, they are entitled to absolute immunity for this conduct.

As explained in Brady and Giglio, disclosing to a criminal defendant exculpatory evidence at or prior to trial, including impeachment evidence that weighs on witness credibility, is a constitutional command to which prosecutors are required to adhere.  See Dennis v. Sec'y, Pa. Dep't of Corr., 834 F.3d 263, 292 (3d Cir. 2016) (en banc) ("The government must disclose all

---

[15] As noted above, absolute immunity extends not only to the prosecutor responsible for the particular constitutional error alleged in a complaint, but also to the prosecutor responsible for managing the impeachment information system.  See Goldstein, 555 U.S. at 349 (holding that "where a § 1983 plaintiff claims that a prosecutor's management of a trial-related information system is responsible for a constitutional error at his or her particular trial, the prosecutor responsible for the system enjoys absolute immunity just as would the prosecutor who handled the particular trial itself").

favorable evidence" which includes evidence that is "exculpatory" or "impeaching.") (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).  The decision to disclose IAD investigations into complaints against Harris, i.e., exculpatory information, is "intimately associated with the judicial phase of the criminal process."  Goldstein, 555 U.S. at 348-49.  DA Krasner and ADA Kean, therefore, are entitled to absolute immunity to the extent the Amended Complaint alleges they were involved in disclosing the IAD reports pertaining to Harris.

DA Krasner and ADA Kean also are entitled to absolute immunity on Plaintiffs' claims against them for placing Harris on the Do Not Call List.  Like the prosecutorial functions at issue in Goldstein, the creation and use of the Do Not Call List are administrative tasks that "necessarily require legal knowledge and the exercise of related discretion."  Id. at 344.  As Plaintiffs concede, the determination of whether a particular police officer should be included on the Do Not Call List is within the discretion of the District Attorney's Office and Defendant Krasner as the District Attorney.  (See Doc. No. 15 at 4.)  Moreover, despite Plaintiffs' assertions to the contrary, DA Krasner and ADA Kean's actions are not administrative tasks like hiring, firing, and managing payroll.  The decision to include police officers on the Do Not Call List "is directly connected with the conduct of a trial" because it affects who the prosecution may or may not call to testify as a witness.  Goldstein, 555 U.S. at 344.  In sum, the inclusion of Harris on the Do Not Call List is a prosecutorial function which affords DA Krasner and ADA Kean absolute immunity on Plaintiff Harris's Section 1983 claim.[16]  And the disclosure to criminal defendants of the IAD investigations into Plaintiff Harris and any details of Plaintiff Dixon-Fowler's sexual assault contained therein

---

[16] To the extent Plaintiffs allege that Defendant Kean's decision not to prosecute the female driver suspected by Harris of driving under the influence is not protected by absolute immunity, their claims are without merit.  The decision whether to "initiate a prosecution is at the core of a prosecutor's role.  A prosecutor is absolutely immune when making this decision."  Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992).

also is a prosecutorial function for which DA Krasner and ADA Kean enjoy absolute immunity. Thus, Counts I and II against Defendants Krasner and Kean are barred by absolute immunity.

### 2.    Counts I and II against the City of Philadelphia Will Be Dismissed

In the City of Philadelphia's Motion to Dismiss, it argues that Counts I and II should be dismissed because the City complied with its obligations under Brady and Giglio and because Plaintiff failed to identify either (1) a municipal policy or custom responsible for the alleged constitutional violations or (2) deliberate indifference by the City to Harris's constitutional rights. (Doc. No. 25 at 18-19.)  Harris argues to the contrary that the City's assertion that "[t]he City's challenged conduct, as described in the Amended Complaint, is the exact process required for the City to comply with Brady" is sufficient to establish the City's liability under Section 1983.  (Doc. No. 30 at 12.)  For reasons that follow, the Section 1983 claims alleged in Counts I and II against the City will be dismissed.

Section 1983 claims against municipalities like the City of Philadelphia are governed by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) and are aptly named Monell claims.  A municipality is not liable under Monell for the actions of its District Attorney undertaken in his or her "role as a prosecutor."[17]  Whitfield, 587 F. Supp. 2d at 672.  Put differently, "a municipality can only be held liable for the acts of its officials undertaken in an administrative capacity."  Id. at 671 (citing Williams v. Fedor, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (concluding that a municipality "cannot be held liable on the basis of the challenged 'prosecutorial decisions'")).

---

[17] "In a claim involving the District Attorney's Office, it is 'undeniable' that the District Attorney himself 'is the highest policymaker within the office.'"  Estate of Tyler v. Grossman, 108 F. Supp. 3d 279, 297 (E.D. Pa. 2015) (quoting Whitfield, 587 F. Supp. 2d at 670).  And "courts in this district have routinely held that Assistant District Attorneys cannot be policymakers for Section 1983 purposes because they lack unreviewable discretion as a matter of law."  Whitfield, 587 F. Supp. 2d at 671 (citations omitted).  Thus, for Section 1983 purposes, Defendant Krasner is a final policymaker while Defendant Kean is not.

Here, accepting the factual averments in the Amended Complaint as true, Plaintiff Harris fails to show a constitutional violation and, thereby, a <u>Monell</u> claim against the City because, as discussed <u>supra</u>, Defendant Krasner's creation of the Do Not Call List is a prosecutorial task, not an administrative one. Again, the decision to include police officers on the Do Not Call List "is directly connected with the conduct of a trial" because it affects who the prosecution may or may not call to testify as a witness. <u>Goldstein</u>, 555 U.S. at 344. Likewise, the disclosure to criminal defendants of the IAD Complaint and file on Harris is a prosecutorial function. Because Defendant Krasner's creation of the Do Not Call List and disclosure of the IAD Complaint and file was a prosecutorial action or an administrative one that is directly connected to the conduct of a trial, rather than a purely administrative one, the City is not liable under Section 1983 for Defendant Krasner's actions. <u>See</u> <u>Whitfield</u>, 587 F. Supp. 2d at 672. Therefore, since no constitutional violation arises in this case, the Section 1983 claims alleged in Counts I and II of the Amended Complaint against the City will be dismissed.

**B.      Request for Injunctive Relief under the Pennsylvania Constitution in Count III against Defendants Krasner and Kean Will Be Denied**

In Count III of the Amended Complaint, Plaintiffs seek equitable relief against Defendants Krasner and Kean in their official capacity. (Doc. No. 15 at 9.) Specifically, Plaintiffs allege that DA Krasner and ADA Kean's disclosure to criminal defendants Harris's IAD Complaint and any related details of Dixon-Fowler's sexual assault contained therein violates Article I, Sections 1 and 11 of the Pennsylvania Constitution. (<u>Id.</u>) In their Motion to Dismiss, DA Krasner and ADA Kean argue that their obligations under <u>Brady</u> and <u>Giglio</u> "[f]oreclose Plaintiffs' [c]laims." (Doc. No. 23 at 17.)

In Count III of the Amended Complaint, Plaintiffs seek injunctive relief against Defendants Krasner and Kean in their official capacity for violations of their rights under the Pennsylvania

Constitution. (<u>See</u> Doc. No. 15 at 9.) Specifically, they "request equitable relief prohibiting Defendants' disclosure of an expunged IAD complaint involving Harris or sexual assault involving Dixon-Fowler." (<u>Id.</u>) However, Plaintiffs' request for injunctive relief in Count III will be dismissed because it seeks to enjoin DA Krasner and ADA Kean from fulfilling their obligations under <u>Brady</u> and <u>Giglio</u>.

In <u>FOP Lodge No. 5 v. City of Phila.</u>, the Fraternal Order of Police and several police officers appealed the lower court's dismissal of their complaint against the City and DA Krasner. 267 A.3d 531, 535 (Pa. Cmwlth. Ct. 2021). In their complaint, the police officers challenged their placement on the Do Not Call List alleging that the City and Krasner violated "their protected liberty interest [under the Pennsylvania Constitution] in their professional and personal reputations." <u>Id.</u> at 546. The Commonwealth Court upheld the lower court's dismissal of the plaintiffs' complaint because <u>Brady</u> and <u>Giglio</u> "authorize[d] the City to release the police officers' personnel information to DA Krasner and because DA Krasner is authorized under <u>Brady</u> and <u>Giglio</u> to engage in all of the conduct alleged in the complaint." <u>Id.</u> at 543. The court further explained that "the District Attorney has an affirmative duty to disclose potentially exculpatory evidence, as well as evidence that could be used to impeach prosecution witnesses." <u>Id.</u> at 544. The court therefore held that "the trial court properly dismissed Appellants' complaint to the extent that it seeks . . . to enjoin DA Krasner from creating and maintaining an internal Do Not Call List, or from disclosing potentially exculpatory or impeachment information to criminal defense counsel." <u>Id.</u>[18]

---

[18] The claims alleged in Count II and Count III are related but distinct. In Count II, Harris alleges that she was not provided an opportunity to be heard before an impartial tribunal in violation of her procedural due process rights under the Fourteenth Amendment. In Count III, by contrast, Plaintiffs seek equitable relief prohibiting the District Attorney's Office from disclosing to

Here, Harris seeks an injunction to prevent the District Attorney Defendants "from placing any and all information, documents, etc. relating to either the expunged IAD complaint regarding [her] or the sexual assault of Plaintiff Dixon-Fowler in any discovery packet for any future criminal prosecution in which Plaintiff Harris may be involved." (Doc. No. 15 at 9.)  In this regard, Harris is seeking the same relief the police officers sought in FOP Lodge, which the Commonwealth Court held they were not entitled to.  See FOP Lodge, 267 A.3d at 543 (upholding trial court's decision that the police officers were not entitled to enjoin the District Attorney from fulfilling its obligations under Brady and Giglio).  Accordingly, for all the above reasons, Count III will be dismissed against the City.

### C.  Intentional Infliction of Emotional Distress Claim Alleged in Count V against Defendants Will Be Dismissed

In Count V of the Amended Complaint, Plaintiffs allege that Defendants are liable for intentional infliction of emotional distress.  (Doc. No. 15 at 11-12.)  This claim will be dismissed for two reasons.  First, DA Krasner and ADA Kean enjoy high public official immunity.  Second, DA Krasner, ADA Kean, and the City enjoy immunity under the Political Subdivision Tort Claims Act ("PSTCA").

### 1.  DA Krasner and ADA Kean Are Entitled to High Public Official Immunity

Defendants Krasner and Kean are entitled to high public official immunity on Plaintiffs' intentional infliction of emotional distress claim alleged in Count V.  As the Pennsylvania Supreme Court explained in Doe v. Franklin Cnty., "high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from

_____

criminal defense attorneys internal affairs investigations of Harris, including those that mention the sexual assault of Dixon-Fowler.

lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." 174 A.3d 593, 603 (Pa. 2017) (citations omitted). The court in Doe also explained that high public official immunity "is an absolute privilege . . . [that] extends to both actions taken as well as statements made by the official during the course of their duties." Id. at 604-05 (citing Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001)). Both district attorneys and assistant district attorneys are high public officials who are afforded absolute immunity for actions taken during the scope of their prosecutorial duties.[19] See Durham, 772 A.2d at 167.

Here, DA Krasner and ADA Kean enjoy high public official immunity because their actions occurred in the regular course of judicial proceedings and are "within the scope of their authority." Doe, 174 A.3d at 603. Prosecutors are required to disclose to the defense exculpatory or impeaching evidence, and the Do Not Call List is meant only to limit who the District Attorney's Office may call as witnesses during criminal proceedings. Plaintiffs do not dispute that the Do

---

[19] In their Response to the District Attorney Defendants' Motion to Dismiss, Plaintiffs cite Osiris Enters. v. Borough of Whitehall, 877 A.2d 560 (Pa. Commw. Ct. 2005) in support of the proposition that high public official immunity applies only in defamation actions. There, the Commonwealth Court of Pennsylvania explained that high public official immunity

> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

Id. at 566 (emphasis in original) (citations omitted). Thus, Osiris itself affords high public officials immunity for actions beyond those only alleging defamation. In fact, it cites Durham where the Pennsylvania Supreme Court held that assistant district attorneys are entitled to high public official immunity from "a tort action alleging that in the course of [the plaintiff's] prosecution several constitutional rights were violation." Id. at 567 (citing Durham, 772 A.2d at 68). Plaintiffs' reliance on Osiris, therefore, is misplaced.

Not Call List was created in the course of Defendant Krasner's official duties.[20]  Because Plaintiffs'

intentional infliction of emotional distress claim arises out of actions taken by DA Krasner and

ADA Kean in the course of their duties and within the scope of their authority, they are entitled to

high public official immunity.  See Joobeen v. City of Phila. Police Dep't, No. 09-1376, 2010 WL

844587, at *6 (E.D. Pa. Mar. 4, 2010) (stating that the former district attorney and current assistant

district attorneys are entitled to high public official immunity on the plaintiff's state law intentional

infliction of emotional distress claim) (citing Cherry v. City of Phila., No. 04-1393, 2004 WL

2600684, at *7 (E.D. Pa. Nov. 15, 2004)).

For the above reasons, the intentional infliction of emotional distress claim alleged in

Count V against Defendants Krasner and Kean will be dismissed because they are entitled to high

public official immunity.

### 2.    DA Krasner, ADA Kean, and the City Are Entitled to Immunity under the Political Subdivision Tort Claims Act

Count V of the Amended Complaint also will be dismissed against DA Krasner, ADA Kean,

and the City because they are entitled to immunity under the Political Subdivision Tort Claims Act

("PSTCA").  Under the PSTCA, "no local agency shall be liable for any damages on account of

any injury to a person or property caused by an act of the local agency or an employee thereof or

any other person," except for enumerated exceptions, none of which apply in this case.[21]  42 Pa.

---

[20] To the extent Plaintiff alleges that Defendant Kean's email to Captain Luca declining prosecution of the female drunk driver who was arrested by Harris was a decision to reinstate or keep Harris on the Do Not Call List (see Doc. No. 15 at 3), he also enjoys high public official immunity on claims stemming from that conduct.  See Durham, 772 A.2d at 167.

[21] There are nine exceptions to political subdivision immunity enumerated in the PSTCA:  (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control of real property; (4) dangerous conditions created by trees, traffic controls, and street lighting; (5) dangerous conditions of utility service facilities; (6) dangerous conditions of streets; (7)

C.S. § 8541.  The City of Philadelphia is protected by the immunity granted by the PSTCA for tort claims.  See Vargas v. City of Phila., 783 F.3d 962, 975 (3d Cir. 2015) ("The PSTCA provides immunity to municipalities and its employees for official actions unless the employee's conduct goes beyond negligence and constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'") (quoting 42 Pa. C.S. § 8550); McShea v. City of Phila., 995 A.2d 334, 341 (Pa. 2010) (holding that the City is protected by the immunity granted in the PSTCA for tort claims). "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." Vargas, 783 F.3d at 975 (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citation omitted)).

Plaintiffs do not assert that the City's provision of Harris's disciplinary records to the District Attorney's Office, or that DA Krasner and ADA Kean's disclosure of exculpatory information to criminal defendants, constitutes "a crime, actual fraud, actual malice, or willful misconduct."  Rather, in their Response in Opposition to the City's Motion, Plaintiffs state that they are "not challenging the City's obligations under Brady."  (Doc. No. 30 at 11.)  And accepting the factual averments in the Amended Complaint as true, Defendants' challenged conduct does not rise to the level of actual malice or an implied desire to intentionally inflict emotional distress on Plaintiffs.

In the Amended Complaint, Harris alleges, for example, that "Defendant's failure to remove the offending document from the discovery packet of any criminal case Plaintiff Harris was involved in" caused Harris to be "reassigned to desk duty as she was no longer able to testify

---

dangerous conditions of sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse.  42 Pa. C.S. § 8542(b).  None of the exceptions apply here.

in court as an accuser of anyone she arrests." (Doc. No. 15 at 7.) Defendants' "failure to remove" the IAD Complaint and file does not constitute willful misconduct, let alone a crime, actual fraud, or actual malice. Moreover, the placement of Harris's name on the Do Not Call List does not rise to the level of actual malice. Defendants are required by law to turn over this information to criminal defendants. Defendants, therefore, are immune under the PSTCA from suit on Plaintiffs' intentional infliction of emotional distress claim. Accordingly, Count V of the Amended Complaint will be dismissed against the City, DA Krasner, and ADA Kean.

### V.     CONCLUSION

For the foregoing reasons, both DA Krasner and ADA Kean's and the City's Motions to Dismiss (Doc. Nos. 23, 25) will be granted in their entirety. An appropriate Order follows.